IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CURTIS CALLOWAY,                    )
                                    )
              Plaintiff,            )
                                    )
      v.                            )         1:15CV187
                                    )
DURHAM COUNTY PUBLIC SCHOOLS        )
BOARD OF EDUCATION                  )
                                    )
              Defendant.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before this court on the Motion to
Dismiss Amended Complaint filed by Defendant Durham County
Public Schools Board of Education ("Defendant") pursuant to
Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. 17.) On
May 26, 2015, Defendant filed this motion to dismiss the Amended
Complaint filed by Plaintiff Curtis Calloway ("Plaintiff") (Doc.
16). Plaintiff filed a response in opposition. (Doc. 19.)
Defendant never filed a reply and the deadline has passed. This
court finds that this matter is ripe for resolution, and for the
reasons stated herein, this court will grant in part and deny in
part Defendant's motion.

# I.  **BACKGROUND**

## A.  **Parties**

Plaintiff is Defendant's former employee. Plaintiff asserts five causes of action, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), failure to accommodate his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), retaliation against him for his disability, wrongful discharge, and wrongful termination. (See First Amended Complaint ("Am. Compl.") (Doc. 16).)

## B.  **Factual Allegations**

The facts are presented in the light most favorable to Plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1]

At the time of his dismissal, Plaintiff was a crisis manager technician/teacher assistant at Durham School of the Arts ("DSA"), a school within Durham Public Schools ("DPS"). (Am. Compl. (Doc. 16) ¶¶ 18, 63.) DPS reassigned Plaintiff from Lakeview School to DSA so that he could provide assistance with a problem child in the Autism/COPE program. (Id. ¶ 17.) The

---

[1] The facts are drawn from the Amended Complaint. (Doc. 16.) This court finds that Plaintiff properly amended his original complaint and thus the Amended Complaint relates back to the initial filing date, making the Amended Complaint the operative pleading. See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" (citation omitted)).

-2-

grounds stated for Plaintiff's dismissal, disputed by Plaintiff, were failure to maintain the safety of assigned students and provide adequate supervision.

DPS hired Plaintiff in 1999 and he worked there until his dismissal in January 2014. (Id. ¶¶ 8, 63.) Prior to his March 2013 transfer to DSA, Plaintiff worked as a teacher assistant and crisis manager technician at Carver Hill and Lakeview School. (Id. ¶¶ 8-10.) Plaintiff alleges he performed his job satisfactorily and was, at all times, qualified for his position. (Id. ¶¶ 19, 80.)

During this time, Plaintiff was under the care of Dr. Susan F. Isbey for hypertension, diabetes, hypercholesterolemia, obstructive sleep apnea, general osteoarthritis, and chronic pain. (Id. ¶ 11.) Dr. Isbey wrote a letter to DPS in November 2012, suggesting that Plaintiff be allowed to arrive to work at 9:00 a.m. because of his health conditions. (Id. ¶¶ 12, 15.) Her recommendation stemmed from Plaintiff's need for adequate time in the morning to eat and take his medications before arriving at work. (Id. ¶ 15.) He has to check his blood glucose three to four times a day, check his blood pressure two to three times a day, and is on fifteen scheduled medications per day. (Id. ¶ 13.) Additionally, he should not operate a motor vehicle if his blood sugar falls below 70 or if his blood pressure is below 100 or higher than 170. (Id. ¶ 14.) Plaintiff alleges that DPS

-3-

engaged in some correspondence with Dr. Isbey but ultimately failed to accommodate him by altering his schedule. (Id. ¶ 16.)

After his transfer to DSA, Plaintiff remained the head baseball coach at Chewning Middle School, located inside Lakeview School. (Id. ¶ 21.) Due to his coaching duties, he needed to leave DSA at 3:15 p.m. (Id.) Plaintiff alleges he informed DSA's principal, David Hawks, that he had received approval to leave at 3:15 p.m. from the Department of Human Resources and the Executive Director of EC Programs.[2] (Id. ¶ 22.) Despite Plaintiff's contentions that he had received approval, Mr. Hawks disagreed, stating that Plaintiff did not have approval to leave early, (id. ¶ 22), and insisting that Plaintiff be present from 8:15 a.m. until 3:45 p.m. each day. (Id. ¶ 20.) This exchange also followed an incident when other staff members attempted to put a child normally under

_____

[2] Plaintiff alleges that his doctor corresponded with the Human Resources Services Administrator, Dorothy McGirt, who then requested clarification about the accommodations requested and potential alternative solutions. (Am. Compl. (Doc. 16) ¶ 16.) He subsequently alleges that he told Mr. Hawks he had approval from Ms. McGirt (Human Resources) and Kristin Bell (Executive Director of EC Programs) to leave at 3:15 p.m. to carry out his coaching duties. (Id. ¶ 22.) While Plaintiff does not specifically allege that he in fact had approval to leave early, (see id. ¶¶ 12-23, 26 ("Mr. Calloway sent a letter to the Assistant Principal, which stated that Freddie McNeil had informed him that upon receiving medical documentation he would have Mr. Calloway's schedule changed to better accommodate Mr. Calloway's medical condition.")), at this stage, reasonable inferences must be made in his favor and thus these allegations are sufficient for the 12(b)(6) analysis.

Plaintiff's care on a bus on April 19, 2013. (Id.) Mr. Hawks then sent Plaintiff a letter stating that he would be required to sign in and out of the main office on a daily basis. (Id. ¶ 23.) Plaintiff alleges he was the only employee required to do so. (Id. ¶ 24.) Plaintiff was tasked with ensuring students boarded their designated buses in the afternoon and alleges that this task prevented him from making it to the office in time to sign out prior to the office closing. (Id. ¶ 43.) Plaintiff further alleges that he expressed this timing issue to Mr. Hawks. (Id. ¶ 42, 43.)

Plaintiff alleges two other miscellaneous incidents with Principal Hawks. First, Plaintiff alleges that Principal Hawks sent him a letter stating Plaintiff was absent from work on September 19, 2013, and had not used proper notification procedures, even though he had a doctor's note. (Id. ¶¶ 28-29.) Plaintiff alleges that the letter accused him of not using the school system to secure a substitute Instructional Assistant, (id. ¶ 29), and further alleges that he had not had to use this procedure while working at Lakeview School. (Id. ¶ 30.) Second, Plaintiff took leave on November 5, 2013, and alleges he indicated and believed that the leave was for a worker's compensation doctor's appointment. (Id. ¶¶ 46, 49.) Principal Hawks sent a November 13, 2013 letter indicating that he had been informed that the appointment was not related to worker's

-5-

compensation. (Id. ¶ 46.) Principal Hawks determined that the leave form violated DPS policy, because it contained false information, and he referred the matter to the Department of Human Resources. (Id. ¶¶ 47-48.)

Plaintiff alleges he made repeated attempts to transfer away from DSA. On November 12, 2013, he sent the Autism/Cope Coordinator an email expressing his desire to be transferred and requested a meeting because he believed he was being bullied and harassed. (Id. ¶ 44.) On November 14, 2013, Plaintiff emailed James F. Key II, requesting to be transferred from DSA as soon as possible. (Id. ¶ 50.) He was not transferred from DSA.

### 1. **Events Leading to Plaintiff's Termination**

Plaintiff's description of the incident that led to his termination is somewhat confusing. Nevertheless, it will be presented in the light most favorable to him. Plaintiff alleges that he was suspended on November 26, 2013, pending investigation into an incident that occurred on October 30, 2013. (Id. ¶ 62.) He was terminated on January 15, 2014, for "failure to maintain the safety of assigned students and provide adequate supervision." (Id. ¶¶ 63-64.) Plaintiff's allegations of these events unfold as follows:

On October 30, 2013, Plaintiff and Behavior Support Assistant James Lillie were supervising six students in the track and field area of DSA. (Id. ¶ 31.) Plaintiff alleges

-6-

Mr. Lillie had seniority over him and served in a supervisory
capacity. (Id. ¶ 32.) Mr. Lillie allegedly asked Plaintiff to
take six Autism/Cope students from the track and field area into
the school building to use the bathroom, get water, and prepare
the students for the next assignment. (Id. ¶ 31.) Once inside,
Plaintiff allegedly informed the supervising teacher, Monique
Bonner, that he was taking a student to the restroom to change
the student's diaper. (Id. ¶ 33.) After returning, Plaintiff
gathered the students and escorted them to another classroom for
the Life Skills Class. (Id. ¶ 34.)

Shortly after escorting the students to the Life Skills
Class, Mr. Hawks approached Mr. Lillie and Plaintiff and
informed them that they left a child unattended in the track and
field area. (Id. ¶ 36.) Mr. Lillie allegedly took full
responsibility for the unattended student. (Id. ¶ 37.) Mr. Hawks
subsequently required Plaintiff, Mr. Lillie, and Ms. Bonner to
write statements about the incident. (Id. ¶ 41.) Plaintiff
alleges that DPS prompted Ms. Bonner to rewrite her statement,
(id. ¶¶ 57-59), and that she and Mr. Lillie were allowed to
resign while Plaintiff was terminated. (Id. ¶¶ 60, 62.)

Plaintiff appealed his termination to the Board of
Education. (Id. ¶ 65.) A three-person panel heard his appeal on
January 28, 2014. (Id. ¶ 66.) The panel failed to unanimously
uphold his termination and referred the appeal to the full

board. (Id. ¶ 67.) On February 18, 2014, the board upheld his dismissal. (Id. ¶ 68.)

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on April 22, 2014. (Id. ¶ 73; Ex. A, EEOC Charge (Doc. 16-1) at 1.) The EEOC Charge of Discrimination has some apparent inconsistencies with the Amended Complaint. In the Charge, Plaintiff checked the race and disability boxes and left the retaliation box blank. (Ex. A, EEOC Charge (Doc. 16-1) at 1.) He wrote: "In late May 2013, I informed David Hawks, Principal, that I needed an accommodation for my medical condition. However, Mr. Hawks denied my accommodation for a desk job but did not give me a reason as to why." (Id.) His description of a desk accommodation differs from the late arrival accommodation alleged in the Amended Complaint. (See Am. Compl. (Doc. 16) ¶ 15.) The Charge briefly mentions Plaintiff allegedly leaving a student unsupervised as the stated reason for his termination and provides facts that suggest a racial motivation behind his termination:

> I am aware of a similarly situated employee, who is Caucasian, and she was involved in the same type of violation on two different occasions and she was not suspended or discharged. I am also aware that I was not involved in the incident that resulted in my suspension and discharge[]. Also two other Black employees were also suspended and discharged for this incident.

-8-

(Ex. A, EEOC Charge (Doc. 16-1) at 1-2.)

The EEOC issued Plaintiff a right to sue letter on October 3, 2014. (Am. Compl. (Doc. 16) ¶ 75; Ex. B (Doc. 16-2).) Plaintiff filed suit in North Carolina state court on January 19, 2015, (Ex. A (Doc. 1-1) at 1, 17 (noting that delayed service was requested and the complaint was served on January 20, 2015)), and Defendant removed the action to federal court. (Notice of Removal ("Removal Notice") (Doc. 1).)

## II.   SUBJECT MATTER JURISDICTION

### A.   Legal Standard

In support of its 12(b)(1) motion to dismiss, Defendant argues that "plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant." (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") Doc. 18 at 5.) Here, however, Defendant removed the action to federal court, asserting subject matter jurisdiction. (Removal Notice (Doc. 1) ¶¶ 3-6.) Thus, Defendant initially bears the burden of establishing subject matter jurisdiction. See Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction."); McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936) ("They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor."). In all cases,

-9-

jurisdiction must be "established as a threshold matter," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citations omitted), and as a "question the court is bound to ask and answer for itself." Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884).

Defendant removed this case based upon federal claim jurisdiction. See 28 U.S.C. § 1331; (Removal Notice (Doc. 1) at 1.) It is undisputed that Plaintiff has asserted federal claims pursuant to Title VII and the Americans with Disabilities Act. As a result, removal and this court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 are not in dispute.

However, Defendant charges additional jurisdictional issues for which the burden to establish jurisdiction is on Plaintiff. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) ("When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."). Specifically, Defendant contends that Plaintiff failed to exhaust administrative remedies as to his state law wrongful termination claim. (See Def.'s Mot. to Dismiss ("Def.'s Mot.")(Doc. 17) at 1-2.)

B. **Analysis**

In North Carolina, "where the legislature has provided by statute an effective administrative remedy, that remedy is

-10-

exclusive and its relief must be exhausted before recourse may be had to the courts." Presnell v. Pell, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979).

A plaintiff may appeal to the local board of education to challenge a decision about "[t]he terms or conditions of employment or employment status of a school employee." N.C. Gen. Stat. § 115C-45(c)(3) (2013). Following an adverse decision by the local board, a plaintiff may appeal to a North Carolina superior court. N.C. Gen. Stat. § 115C-45 (2013).[3] Here, Plaintiff admits he "did not exercise his administrative right to appeal his dismissal to Superior Court." (Pl.'s Mem. of Law in Opp'n of Def.'s Mot. to Dismiss ("Pl.'s Mem.") (Doc. 19) at 7.) Further, he does not argue that the exhaustion requirement

---

[3] In 2013, the North Carolina General Statutes provided:

> An appeal of right brought before a local board of education under subdivision (1), (2), (3) or (4) of this subsection may be further appealed to the superior court of the State on the grounds that the local board's decision is in violation of constitutional provisions, is in excess of the statutory authority or jurisdiction of the board, is made upon unlawful procedure, is affected by other error of law, is unsupported by substantial evidence in view of the entire record as submitted, or is arbitrary and capricious. However, the right of a noncertified employee to appeal decisions of a local board under subdivision (3) of this subsection shall only apply to decisions concerning the dismissal, demotion, or suspension without pay of the noncertified employee. . . .

N.C. Gen. Stat. § 115C-45 (2013).

-11-

should be excused because the administrative remedy is futile or inadequate. See Justice for Animals, Inc. v. Robeson Cty., 164 N.C. App. 366, 372, 595 S.E.2d 773, 777 (2004).

Because Plaintiff failed to exhaust his state administrative rights, neither a North Carolina state court nor this court has subject matter jurisdiction over this claim. Thus, his state wrongful termination claim (Count V) will be dismissed.

Additionally, while Defendant did not raise the issue of Plaintiff's potential failure to exhaust administrative remedies for his ADA claims, this court will address this concern. There is a mismatch between the accommodation alleged in the Amended Complaint — a late arrival time (Am. Compl. (Doc. 16) ¶ 15) — and the accommodation in the EEOC charge — a desk job. (Ex. A, EEOC Charge (Doc. 16-1) at 1.)

Sydnor v. Fairfax County, Virginia, 681 F.3d 591 (4th Cir. 2012), specifically addresses mismatched accommodation requests. See id. at 593. At summary judgment, the plaintiff's alleged reasonable accommodation was working with a wheelchair. Id. However, the defendant argued that this was not in her EEOC charge, as she told the EEOC the "sole accommodation . . . she had requested was light duty work." Id.

The Fourth Circuit discussed the importance of balancing the need for notice to employers with the need to prevent

technicalities from derailing legitimate complaints. See id. at
594. It concluded that the accommodation mismatch alone did not
indicate a failure to exhaust administrative remedies because
"[t]he touchstone for exhaustion is whether plaintiff's
administrative and judicial claims are 'reasonably related,' not
precisely the same, and there are sufficient similarities
between the two to find this requirement satisfied here." Id. at
595.

The similarities included that both sets of allegations
"involved the same place of work and the same actor," rather
than "shifting sets and a rotating cast of characters that would
have deprived her former employer of notice." Id. (citation
omitted). Further, both sets of allegations "focused on the same
type of discrimination" — "fail[ure] to provide a reasonable
accommodation" — rather than adding new types of discrimination,
such as age, sex, or race. Id. Additionally, the plaintiff did
not change or add to her description of her disability. Id.
Differences between the two sets involved the type of work each
accommodation would entail. Id. at 595-96. On balance, however,
the court determined that

> [the] different proposals are linked together by a
> similarity — whatever the task, [plaintiff] faced the
> same difficulties in walking . . . and needed some
> form of accommodation. Because one logical
> accommodation for this specific disability was the use
> of a wheelchair, the [defendant] should not have been
> caught off guard when it was eventually raised. We

-13-

> therefore believe that this particular distinction
> does not overcome the significant similarities in this
> case that support a finding of exhaustion.

Id. at 596.

In summary, key considerations include: (a) the actors and work context, (b) the underlying type of discrimination, (c) the underlying disability, and (d) any logical links between the disability and the proposed accommodations or between the accommodations and the facts themselves, such that the employer would be afforded ample notice. See id. at 594-97; cf. Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) ("We hold that a plaintiff fails to exhaust his administrative remedies where, as here, his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."); Tavares v. United Airlines, Civil Action No. 1:14-cv-1121, 2015 WL 5026197, at *5 (E.D. Va. Aug. 24, 2015) (district court identifying three situations where EEOC charge allegations are insufficient: a different basis of discrimination, a different type of

discrimination, and different time frames, actors, and conduct), appeal docketed, No. 15-2129 (4th Cir. Sept. 24, 2015).[4]

At this stage, it appears clear that the same actor is involved (Principal Hawks) in the same context (Plaintiff's work at DSA). (Ex. A, EEOC Charge (Doc. 16-1) at 1.) While the EEOC charge only states "my medical condition," (id.), there is no indication that a different medical condition exists, particularly given that Plaintiff's medical allegations rest on a doctor's letter from late 2012. (Am. Compl. (Doc. 16) ¶ 12.) Some difficulty arises, however, in whether Plaintiff put his employer on notice that a different accommodation from that listed in the EEOC charge (desk job) would arise from reasonable investigation. At this stage, taking all reasonable inferences in Plaintiff's favor, it appears that Defendant generally was on

---

[4] Brown v. Huntington Ingalls, Inc., Civil Action No. 4:13cv26, 2013 WL 5591932 (E.D. Va. July 25, 2013), also addressed the scope of an EEOC charge:

> As our circuit's decisions make clear, any test to determine what is "reasonably related" must reflect that the three methods for defining the scope of an EEOC charge (explicitly stated, reasonably related, and reasonable investigation) are intricately connected. These phrases are not three independent elements, but three separate ways to define the scope of an EEOC charge.

Id. at *6 (citation omitted). Again, the focus is clear: the EEOC charge and the complaint must be similar enough that an employer would have been on notice and the administrative process truly would have been exhausted, as required, with respect to the claim the plaintiff seeks to bring.

notice of the disability and of the reasonable accommodations that could result. This court notes the differences between a desk job accommodation and a late arrival accommodation but determines that, because reasonable investigation of an alleged denial of a medical accommodation would have revealed the letter allegedly requesting a late arrival, Plaintiff meets the exhaustion requirement and is properly before this court.

## III. **FAILURE TO STATE A CLAIM**

### A.    **Legal Standard**

Defendant also moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6). To survive a motion to dismiss, Plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). A court must accept the complaint's factual allegations as true when ruling on a Rule 12(b)(6) motion. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp.

-16-

2d 636, 646 (M.D.N.C. 2004) (citing <u>McNair v. Lend Lease Trucks,</u> <u>Inc.</u>, 95 F.3d 325, 327 (4th Cir. 1996)). However, this "does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." <u>Id.</u> at 646. A court does not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

### B.    <u>Violation of Title VII of the Civil Rights Act of 1964 - Race Discrimination (Count I)</u>

Defendant moves to dismiss Plaintiff's Title VII race discrimination claim for three reasons: (1) lack of subject matter jurisdiction;[5] (2) failure "to allege the required elements of a prima facie case of either disparate treatment or retaliation;" and (3) because "the allegations are vague and conclusory and they fail to state facts sufficient to meet the plausibility standard." (Def.'s Mot. (Doc. 17) ¶¶ 3-4.) Plaintiff counters that "Defendant's argument is faulty at best because it relies solely on a prima facie standard." (Pl.'s Mem. (Doc. 19) at 7.)

---

[5] Defendant interpreted Plaintiff's Amended Complaint as including a race-based retaliation claim. However, in the January 6, 2016 hearing, Plaintiff clarified that he only seeks to include a race discrimination claim and thus any arguments surrounding a supposed race retaliation claim are moot.

-17-

In the Title VII context, although Plaintiff is not required to meet the McDonnell Douglas evidentiary standard of a prima facie case of discrimination, he nevertheless must "state a plausible claim for relief under Title VII." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584-85, 588 (4th Cir. 2015) (citations omitted), petition for cert. filed, 84 U.S.L.W. 3260 (U.S. Aug. 26, 2015)(No. 15-573); see also Wright v. North Carolina, 787 F.3d 256, 264 n.4 (4th Cir. 2015); Craddock v. Lincoln Nat'l Life Ins. Co., 533 F. App'x 333, 336 n.3 (4th Cir. 2013).

While Plaintiff cites Prince-Garrison v. Maryland Department of Health and Mental Hygiene, 317 F. App'x 351 (4th Cir. 2009), for the proposition that a prima facie standard is not required, (Pl.'s Mem. (Doc. 19) at 7), the case states in full that, while a "civil rights plaintiff need not plead facts that constitute a prima facie case under the framework of McDonnell Douglas Corp. v. Green, in order to survive a motion to dismiss[,] . . . the plaintiff retains the burden to allege facts sufficient to state all the elements of her claim." 317 F. App'x at 353 (emphasis added) (citations omitted); see also Johnson v. Angels, No. 1:14-cv-1087, 2015 WL 5009276, at *3 (M.D.N.C. Aug. 21, 2015) (citing McCleary-Evans, 780 F.3d at 585).

-18-

Thus, a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 556 U.S. at 679. Under this standard, "[a] 'sheer possibility' of termination based on race . . . is insufficient to withstand a Rule 12(b)(6) challenge." Johnson, 2015 WL 5009276, at *3 (citation omitted). Rather, the specific facts alleged should raise an inference of discrimination. Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006), overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015) (overruling holding on isolated incidents of harassment in hostile work environment claims).[6]

---

[6] Covington v. Randolph Hosp., Inc., 1:15CV343, 2015 WL 7755445 (M.D.N.C. Dec. 1, 2015), summarizes the current standard succinctly:

> In Title VII cases, a plaintiff does not need to plead a prima facie case of race discrimination in order to survive a motion to dismiss. But a plaintiff cannot simply plead facts that are "consistent with discrimination." Instead, the plaintiff must "allege facts to satisfy the elements of a cause of action created by that statute." Thus, if an employee claims to have suffered an adverse employment action, she must plead facts to raise a plausible inference that she suffered the adverse action "because of [her] race."

Id. at *3 (alterations in original) (citing McCleary-Evans, 780 F.3d at 585).

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Sufficient facts allow courts to infer that a plaintiff was discriminated against on racial grounds. Cf. Johnson, 2015 WL 5009276, at *3 ("[A] plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by [Title VII].' Here, to state a claim of racially discriminatory discharge, [Plaintiff] is required to allege sufficient facts to establish a plausible basis for believing that she was discharged 'because of [her] race.'" (citations omitted)). Correspondingly, facts insufficient to reasonably infer discrimination, suggesting instead only "[a] 'sheer possibility' of termination based on race, [are] insufficient to withstand a Rule 12(b)(6) challenge." Id. In those cases, plaintiffs fail to allege sufficiently that race, instead of some other factor, was the true reason for their termination. See Coleman, 626 F.3d at 191 (holding plaintiff insufficiently pled discrimination where the complaint "fail[ed] to establish a plausible basis for believing [another employee] and [plaintiff] were actually similarly situated or that race was the true basis for

-20-

[plaintiff's] termination"). Thus, to survive, a claim must allow the court to "discern" that the plaintiff's "race factored into his termination." Jordan, 458 F.3d at 346-47; see Johnson, 2015 WL 5009276, at *3 (identifying as problematic a failure to "allege[] the race of any other employee" discussed in the case because, "[w]ithout this information, the Court is unable to draw a reasonable inference that Defendants fired [her] because of her race").

Given the standard of review and reasonable inferences allocated to nonmoving parties, Plaintiff's allegations are sufficient to survive Defendant's 12(b)(6) motion. He indicates that race factored into his termination, specifically alleging that "students of the Autism/COPE program have left the premises of DSA unattended on multiple occasions, and Caucasian employees responsible for the supervision of said students were not terminated" and that "a student under the care and supervision of Ms. Weaver, a Caucasian teacher, ran away multiple times and had to be pursued . . . . [and she] was not written-up or terminated, but instead was allowed to transfer." (Am. Compl. (Doc. 16) ¶¶ 69-71.) Allegations of disparate racial treatment are also in Plaintiff's EEOC Charge of Discrimination. (Ex. A, EEOC Charge (Doc. 16-1) at 2.) Whether these allegations are true is a matter for a later determination. For purposes of this Rule 12(b)(6) motion, however, the allegations move his

complaint from merely showing the termination of an African American employee, (Am. Compl. (Doc. 16) ¶ 1), to a plausible claim that his race factored into his termination.

Plaintiff also sufficiently alleges satisfactory job performance. All paragraphs referring to unsatisfactory job performance are in dispute, (see Am. Compl. (Doc. 16)), and reasonable inferences must be made in Plaintiff's favor. See, e.g., Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 762 (M.D.N.C. 2015). As to claims not in dispute, Plaintiff alleges he was originally hired in September 1999, promoted in February 2001, and served as head baseball coach at the middle school. (Am. Compl. (Doc. 16) ¶¶ 8, 9, 21.) His reassignment to DSA occurred not because of performance issues, but so "he could provide assistance with a problem child in the Autism/COPE program." (Id. ¶ 17.) Acting in concert, the allegations that he was employed by Defendant for over fourteen years and was subsequently promoted, that his reassignment was based on his skills rather than performance issues, and that he was trusted to lead an extracurricular team, suggest it is plausible that his prior performance is indicative of his performance at the time of termination. Cf. Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015) (finding that the plaintiff "could have amended his complaint to add factual allegations to satisfy the standards," and listing potential

-22-

allegations he could have added to do so, such as, "that he had 'always met or exceeded the performance expectations'" or "referenced positive feedback or performance reviews that he had received"). More importantly, when assessing his performance at the time of termination, rather than in the past, allegations of negative conduct are in dispute.

Further, there is no repeated pattern of negative behavior for which Plaintiff was fired.[7] The stated reason for termination was "failure to maintain the safety of assigned students and provide adequate supervision." (Am. Compl. (Doc. 16) ¶ 64.) The Amended Complaint only includes one situation satisfying these criteria — the October 30, 2013 incident, (id. ¶¶ 31-39), and the legitimacy of that situation is in dispute. Further, while Plaintiff emphasizes his past work history and promotion, he also specifically alleges that he cared for the children under his supervision, that the child left behind at the track was under another person's supervision, and that he was in fact fulfilling these expectations regarding care and supervision at

_____

[7] While Defendant contends that the corrective actions regarding Plaintiff's sign-in-and-out times shows repeated failure to meet his employer's legitimate expectation that he arrive on time, the stated reason for termination was failure to properly supervise students and is alleged to correlate to the October 30th incident.

the time of his termination.[8] Thus, for Rule 12(b)(6) purposes,
Plaintiff sufficiently alleged that he was fulfilling his
employer's reasonable expectations at the time of termination.

Finally, there is no dispute that Plaintiff is a member of
a protected racial class and that he suffered an adverse
employment action. For these reasons, Plaintiff's Title VII
racial discrimination claim will survive Defendant's motion to
dismiss.

## C. **Violation of the Americans with Disabilities Act of 1990 – Failure to Accommodate; Retaliation; and Wrongful Discharge**

Defendant argues that Plaintiff's ADA claims should be
dismissed because his complaint "fail[s] to allege the required
elements of claims under the ADA for failure to accommodate,
retaliation, and wrongful discharge." (Def.'s Mem. (Doc. 17)
¶ 5.) Plaintiff counters that Defendant cannot use a prima facie
standard since "a civil rights plaintiff need not plead facts
that constitute a prima facie case . . . to survive a motion to
dismiss." (Pl.'s Mem. (Doc. 19) at 11.)

Both wrongful discharge and failure to accommodate "require
a showing that [the plaintiff] was 'disabled' within the meaning

---

[8] Additionally, to the extent that the stated reason for
termination may have basis in fact, Plaintiff's allegations
regarding other employees not being terminated for similar
conduct lends credence to the argument that a single incident
was not a sufficient break from expectations to result in
termination. However, as the incident is in dispute, this court
will focus on that argument.

of the ADA." <u>Rhoads v. F.D.I.C.</u>, 257 F.3d 373, 387 (4th Cir. 2001) (citations omitted); <u>see</u> 42 U.S.C. § 12112(a). Disability includes "a physical or mental impairment that substantially limits one or major life activities of such individual." 42 U.S.C. § 12102(1)(A).[9] Plaintiff alleges he is a qualified individual with a disability due to his "hypertension, diabetes, hypercholesterole[m]ia, obstructive sleep apnea, general osteoarthritis, and chronic pain." (Am. Compl. (Doc. 16) ¶¶ 85, 110.) Defendant does not contest these medical conditions. (See Def.'s Mem. (Doc. 18) at 14, 16-17.) Thus, this court will consider Plaintiff's three ADA claims: failure to accommodate, retaliation, and wrongful discharge.

### 1. **Failure to Accommodate (Count II)**

The elements of a failure to accommodate claim require Plaintiff to plausibly allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." <u>Wilson v. Dollar Gen. Corp.</u>, 717 F.3d 337, 345 (4th Cir. 2013) (citations omitted). "A job function is essential when 'the reason the position exists

---

[9] Section 12102 further defines "major life activities." § 12102(2)(A).

is to perform that function,' . . . or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." <u>Jacobs v. N.C. Admin. Office of the Courts</u>, 780 F.3d 562, 579 (4th Cir. 2015) (citation omitted).

Defendant was on notice from a doctor's letter. (Am. Compl. (Doc. 16) ¶ 86; Def.'s Mem. (Doc. 18) at 14 (arguing only that Plaintiff failed to adequately plead that he could perform the essential functions of the position and not challenging the employer notice requirement).) If, however, Plaintiff "fails to allege facts demonstrating that he could have performed his job's essential functions with reasonable accommodation, dismissal of [his] claim under Rule 12(b)(6)" would be proper. <u>Cabrera Mejia v. Wal-Mart</u>, No. 1:14CV237, 2014 WL 5531432, at *2 (M.D.N.C. Nov. 3, 2014), <u>aff'd</u>, 599 F. App'x 520 (4th Cir. 2015).

<u>Cabrera Mejia v. Wal-Mart</u>, No. 1:14CV237, 2014 WL 5531432 (M.D.N.C. Nov. 3, 2014), <u>aff'd</u>, 599 F. App'x 520 (4th Cir. 2015), emphasized the "specificity required" for failure to accommodate claims. <u>Id.</u> at *3. Illustratively, it dismissed a complaint that alleged "a request for some unknown accommodation" without any "details as to whether the requested accommodation was plausible or even what it was" and also "fail[ed] to provide even the most basic details about his job,

-26-

let alone that he could have performed its essential functions."
Id. at *3 (citations omitted).

As to the necessary accommodation, Plaintiff alleges the doctor's letter "explained that [Plaintiff] needed adequate time in the morning to eat and take his medications before arriving at work. . . . [and t]herefore . . . suggested that [Defendant] make the accommodation to allow [his] work day to begin at 9:00 AM." (Am. Compl. (Doc. 16) ¶ 15.) Although his EEOC charge contains a request for a desk job accommodation, (Ex. A, EEOC Charge (Doc. 16-1) at 1), the Sydnor analysis compels this court to find that a mismatch alone does not necessitate dismissal at this stage. See 681 F.3d at 594-97.

As a "Crisis Manager Technician," Plaintiff "provide[d] assistance with a problem child in the Autism/COPE program," cared for children, including supervision and helping change diapers, and "ensur[ed] students boarded their designated buses in the afternoon." (Am. Compl. (Doc. 16) ¶¶ 9, 17, 20, 31, 33, 43.) He also specifically alleges that his purpose at DSA was to "provide assistance with a problem child in the Autism/COPE program." (Id. ¶ 17.)

Based on these assertions, Plaintiff further alleges the plausibility of his proposed accommodation: "The accommodation sought was reasonable because Defendant had multiple staff with the capacity to fill Plaintiff's duties until his arrival at

-27-

9:00 AM." (Id. ¶ 88.) Because Plaintiff provides details about the job and its essential functions, namely, supervising children during the school day, Defendant's claim that Plaintiff does not allege additional information about his job function is without merit. (See Def.'s Mem. (Doc. 18) at 15.)

At this stage, taking plausible inferences in his favor, Plaintiff also sufficiently alleges Defendant's refusal to make the requested accommodation. (See id. at 14 (arguing only about the sufficiency of Plaintiff's allegations about essential functions, not the employer's refusal to make the accommodation(s)); Am. Compl. (Doc. 16) ¶ 89.) Despite alleging a request for a late arrival accommodation in November 2012, and receiving a clarification request from Human Resources,[10] as of April 19, 2013, Plaintiff was expected to "be present [at work] from 8:15 AM until 3:45 PM during the work day." (Am. Compl.

---

[10] This request appears to be an attempt to fulfill "[t]he duty to engage in an interactive process to identify a reasonable accommodation [that] is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346-47 (4th Cir. 2013) (citation omitted); see also Haneke v. Mid-Atl. Capital Mgmt., 131 F. App'x 399, 400 (4th Cir. 2005) ("Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." (citation omitted)). Further, based on the allegations, there is no indication that the employer's duty to engage in this process collapsed. Wilson, 717 F.3d at 347.

(Doc. 16) ¶ 20).[11] If Plaintiff's accommodation request had been granted — to have his work day begin at 9:00 a.m., (id. ¶ 15) — then he would not be required to be at work by 8:15 a.m. (See id. ¶ 20.) Consequently, even without a formal denial from Human Resources, Plaintiff's accommodation request had been effectively denied, as he was not permitted to arrive late.

Defendant further emphasizes that the stated grounds for termination do not implicate the requested accommodation. (See Def.'s Mem. (Doc. 18) at 15.) However, this causal connection is not an element of a failure to accommodate claim. Thus,

_____

[11] Although, confusingly, Plaintiff's EEOC Charge of Discrimination details a completely different requested accommodation, charging that his "accommodation for a desk job" was denied by Principal Hawks without explanation, (Ex. A, EEOC Charge (Doc. 16-1) at 1 (emphasis added)), the Sydnor analysis - which applied specifically to a failure to accommodate claim at the summary judgment stage — as applied supra, provides a broad enough umbrella to allow some different accommodations to proceed.
    Further, although Plaintiff alleges that this expectation - which would appear to be a denial of his request for an accommodation — occurred on April 19, 2013, and he did not file his EEOC charge of discrimination until April 22, 2014, over one year later, the Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). But see Gilreath v. Cumberland Cty. Bd. of Educ., No. 5:11-CV-627-BR, 2014 WL 3779090, at *4 (E.D.N.C. July 31, 2014) ("Courts that have analyzed the [continuing violation] doctrine in connection with failure to accommodate claims have concluded that the doctrine does not apply." (citations omitted)).

Plaintiff's failure to accommodate claim is sufficient to survive this 12(b)(6) motion.

### 2. <u>Retaliation (Count III)</u>

Plaintiff's second ADA claim is retaliation. Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a) (2012). "A retaliatory discharge claim under the ADA has three prima facie elements: [the plaintiff] must show (1) that he engaged in protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the adverse activity and the protected action." <u>Haulbrook v. Michelin N. Am., Inc.</u>, 252 F.3d 696, 706 (4th Cir. 2001) (emphasis removed) (citations omitted).

### 3. <u>Wrongful Discharge (Count IV)</u>

Plaintiff's third ADA claim is wrongful or discriminatory discharge. A claim of ADA wrongful discharge is sufficiently pled if the plaintiff plausibly "demonstrate[s] that (1) he 'was a qualified individual with a disability'; (2) he 'was discharged'; (3) he 'was fulfilling h[is] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination.'" <u>Reynolds v. Am. Nat'l Red. Cross</u>, 701

F.3d 143, 150 (4th Cir. 2012) (citation omitted); see Haulbrook, 252 F.3d at 702 (citations omitted).

This court will find that Plaintiff fails to allege sufficiently either a causal link between his protected activity — requesting an ADA accommodation[12] — and his termination, or that the circumstances of his discharge raise a reasonable inference of unlawful discrimination, implicating both his retaliation and his wrongful discharge claims.

This element is far from perfunctory: merely "a conclusory statement that there was no other reason for [the plaintiff's] discharge" is insufficient. Adams v. Shipman, No. 1:13CV858, 2014 WL 4924299, at *7 (M.D.N.C. Sept. 30, 2014); see Rocha v. Coastal Carolina Neuropsychiatric Crisis Servs., P.A., 979 F. Supp. 2d 670, 679 (E.D.N.C. 2013).

Under this prong, employers remain free to take adverse employment actions when the action and the disability are truly unrelated. Cf. Williams v. Brunswick Cty. Bd. of Educ., 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010) (holding employer did not take action against plaintiff because of her disease; instead, the working relationship deteriorated over time for other reasons).

---

[12] An allegation that the plaintiff requested an accommodation can sufficiently allege protected conduct at the 12(b)(6) stage. Dickinson v. Univ. of N.C., 91 F. Supp. 3d 755, 769 (M.D.N.C. 2015); cf. Manson v. N.C. A&T State Univ., No. 1:07CV867, 2008 WL 2987071, at *8 (M.D.N.C. July 31, 2008).

-31-

Consequently, the plaintiff must allege facts suggesting a reasonable inference of unlawful discrimination, rather than the mere coincidence of an action against an employee who happens to be disabled. Additionally, the inference is limited, as "[a]t the pleading stage, there is no exchange of burdens of proof" and "evidence tending to show an alternative to discrimination is inappropriate at this posture." George v. Roush & Yates Racing Engines, No. 5:11CV00025-RLV, 2012 WL 3542633, at *5 (W.D.N.C. Aug. 16, 2012) (citation omitted).

When assessing causation,

> the discharge of an employee soon after he engages in a protected activity is "strongly suggestive of retaliatory motive," and "gives rise to a sufficient inference of causation to satisfy the prima facie requirement." There is no precise formula as to when an employer's actions will trigger application of that inference.

Coursey v. Univ. of Md. E. Shore, 577 F. App'x 167, 175-76 (4th Cir. 2014) (citations omitted); see also Lamb v. Qualex, Inc., 33 F. App'x 49, 60 (4th Cir. 2002) ("Indeed, '[a] close temporal connection between the two events "is generally enough to satisfy the third element."'" (citations omitted)). Examples of sufficiently close temporal proximity between engaging in a protected activity and an adverse employment action include seven months in Coursey v. University of Maryland Eastern Shore, 577 F. App'x 167, 175-76 (4th Cir. 2014) (finding defendant also "present[ed] [plaintiff's] EEOC complaint as evidence in his

-32-

termination proceedings"), and three weeks in <u>Jacobs v. North</u>
<u>Carolina Administrative Office of the Courts</u>, 780 F.3d 562, 578-
79 (4th Cir. 2015). However, temporal proximity, by itself, is
not sufficient to allege causation. <u>See</u> <u>Staley v. Gruenberg</u>, 575
F. App'x 153, 156 (4th Cir. 2014); <u>Williams v. Brunswick Cty.</u>
<u>Bd. of Educ.</u>, 440 F. App'x 169, 172 (4th Cir. 2011) (discussing
when "temporal proximity . . . [was] purely coincidence").

A plaintiff may be unable to plead sufficiently where the
employer knew about a disease or disability for several years
before taking any adverse action. <u>Feldman v. Law Enf't Assocs.</u>
<u>Corp.</u>, 955 F. Supp. 2d 528, 546 (W.D.N.C. 2013) (citing
<u>Brewington v. Getrag Corp.</u>, Civil No. 5:09CV31-V, 2011 WL
4829399, at *6 (W.D.N.C. Oct. 12, 2011) (on a 12(b)(6) motion to
dismiss, an inference of discrimination could not be established
where employer knew of plaintiff's disability for approximately
three years before taking adverse action)); <u>cf.</u> <u>Webb v. Med.</u>
<u>Facilities of Am.</u>, No. 7:05CV00409, 2005 WL 3547034, at *2 (W.D.
Va. Dec. 28, 2005).

Given these illustrations, Plaintiff fails to sufficiently
allege either that his termination occurred under circumstances
raising a reasonable inference of unlawful discrimination or

-33-

that a causal link exists between his protected activity and his termination.[13]

His initial accommodation request occurred "[o]n or about November 8, 2012," (Am. Compl. (Doc. 16) ¶ 12), his initial suspension occurred "[o]n or about November 26, 2013," (id. ¶ 62), and his notice of termination was sent "[o]n or about December 17, 2013." (Id. ¶ 63.)[14] Based on Plaintiff's own allegations, his suspension occurred a little over a year after his initial accommodation request. Consequently, he does not have the benefit of temporal proximity to suggest a causal connection. Further, unlike Coursey, there is no specific indication that Plaintiff's ADA accommodation request played a role in his termination.[15]

While plaintiffs need not establish an actual connection at this stage, Plaintiff here lacks any allegations or inferences of discriminatory comments, actions, or behavior toward him on the basis of his ADA disabilities. While he alleges that

---

[13] With respect to his ADA wrongful discharge claim, see supra for analysis of Plaintiff's claims with respect to his Title VII race discrimination claims.

[14] Plaintiff further alleges that his disagreements with Principal Hawks regarding time expectations occurred months earlier in April 2013. (Am. Compl. (Doc. 16) ¶¶ 20-27.)

[15] While this court notes Plaintiff has alleged some disparate treatment, the allegations at best indicate causation based on racial discrimination and fail to, even with reasonable inferences, sufficiently allege causation for ADA retaliation.

-34-

Defendant sought to require him to remain at school for the entirety of the school day through a sign-in-and-out procedure, this was in the context of Plaintiff's afternoon coaching duties, rather than his need for a late arrival accommodation. Even when taking as true his claim that the stated reason for termination is pretextual, the problem remains that Plaintiff has not alleged sufficient facts to support a plausible inference that his termination instead arose from a discriminatory animus towards his disability or accommodation. Twombly and Iqbal belie the sort of naked assertions Plaintiff makes, namely: "Defendant's termination of Plaintiff's employment was in temporal proximity to him availing himself of protected activity under the ADA, seeking a reasonable accommodation, and raises a reasonable inference of unlawful discrimination." (Am. Compl. (Doc. 16) ¶ 113.)

Further, Plaintiff alleges that: (1) his accommodation request was sent in November 2012, (id. ¶¶ 12-15); (2) he was reassigned for an unrelated reason, (id. ¶ 17); (3) the disagreement regarding timeliness expectations began in April 2013, (id. ¶ 20); (4) there was an alleged incident in October 2013, on which Defendant justified termination and about which Plaintiff disputes a number of facts, (id. ¶¶ 31-41, 52-64), and (5) Plaintiff received notice of termination in December 2013, (id. ¶ 63), over a year after his accommodation request. By only

-35-

alleging that an accommodation request occurred, pleading
various other factors in the interim, and then a final
termination decision over a year later, Plaintiff fails to
allege sufficient grounds to make any sort of plausible
inference suggesting unlawful discrimination. His bald
allegation of "temporal proximity" especially fails to withstand
muster.

Because Plaintiff fails to allege sufficiently either that
his discharge occurred under circumstances raising a reasonable
inference of unlawful discrimination or that there is a causal
connection between his accommodation request and his
termination, this court will grant Defendant's motion with
respect to Plaintiff's retaliation and wrongful discharge claims
under the ADA.

IV.  **CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that
Defendant's Motion to Dismiss (Doc. 17) is **GRANTED IN PART**, in
dismissing Counts III, IV, and V, and **DENIED IN PART**, in keeping
Plaintiff's racial discrimination claim in Count I and his
failure to accommodate claim in Count II.

This the 17th day of February, 2016.

_____
                    United States District Judge